**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:25-cv-24473-WILLIAMS/LETT**

FELIX CARDERO, *individually and on behalf of others similarly situated*,

        Plaintiff,

vs.

AMENIFY CORPORATION,

        Defendant.

_____/

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS**
**ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

      Defendant, Amenify Corporation by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully submits this Motion to Dismiss the Class Action Complaint filed by Plaintiff Felix Cardero with an incorporated Memorandum of Law.

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

MEMORANDUM OF LAW .................................................................................................... 1

I. INTRODUCTION ....................................................................................................... 1

II. LEGAL STANDARD .................................................................................................. 2

III. ARGUMENT ............................................................................................................... 3

    A. After Loper Bright and McLaughlin, the Court Must Apply the TCPA's Plain Statutory Language as Written .................................................................... 3

    B. Plaintiff Does Not Have a Private Right of Action Under 47 U.S.C ..................... 4

    C. FCC Implementing Regulations Cannot Save Plaintiff's Complaint From Dismissal ................................................................................................................ 9

    D. The Complaint Should Be Dismissed With Prejudice ......................................... 11

IV. CONCLUSION .......................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)..........................................................................................................10

*Am. Marine Tech., Inc. v. World Grp. Yachting, Inc.*,
    418 F. Supp. 3d 1075 (S.D. Fla. 2019) ...............................................................................2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................................2

*Bank v. Pitt*,
    928 F.2d 1108 (11th Cir. 1991) ........................................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................................2

*Bosley v. A Bradley Hosp. LLC*,
    No. 25-cv-22336, 2025 U.S. Dist. LEXIS 183986 (S.D. Fla. Sep. 18, 2025) ...........................7

*Bostock v. Clayton Cnty.*,
    590 U.S. 644 (2020)............................................................................................................4

*Bufkin v. Collins*,
    604 U.S. 369 (2025)............................................................................................................7

*Davis v. CVS Pharmacy, Inc.*,
    797 F. Supp. 3d 1270 (N.D. Fla. 2025)....................................................................... passim

*El Sayed v. Naturopathica Holistic Health, Inc.*,
    No. 8:25-cv-847-SDM-CPT, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ..................2, 6, 8

*Glasel v. Office Depot, LLC*,
    No. 9:24-cv-80910, 2025 U.S. Dist. LEXIS 231053 (S.D. Fla. Nov. 25, 2025) ........................7

*Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*,
    146 F.4th 1080 (11th Cir. 2025) .........................................................................................4

*Hall v. United Ins. Co. of Am.*,
    367 F.3d 1255 (11th Cir. 2004)..........................................................................................3

*Hornady v. Outokumpu Stainless USA, LLC*,
    118 F.4th 1367 (11th Cir. 2024) .........................................................................................2

*Jones v. Blackstone Med. Servs., LLC*,
   792 F. Supp. 3d 894 (C.D. Ill. 2025) ................................................................................ passim

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024) .......................................................................................................... passim

*McGonigle v. Office Depot, LLC*,
   No. 9:25CV80069, 2025 U.S. Dist. LEXIS 231061 (S.D. Fla. Nov. 25, 2025) ........................ 7

*McLaughlin Chiropractic Assocs. v. McKesson Corp.*,
   606 U.S. 146 (2025) .......................................................................................................... passim

*Russello v. United States*,
   464 U.S. 16 (1983) ............................................................................................................. 4, 6

*Short v. Immokalee Water & Sewage Dist.*,
   801 F. App'x 671 (11th Cir. 2020) ........................................................................................ 12

*United States v. Silva*,
   443 F.3d 795 (11th Cir. 2006) ................................................................................................. 3

*Woldeab v. Dekalb Cty. Bd. of Educ.*,
   885 F.3d 1289 (11th Cir. 2018) .............................................................................................. 11

*Young v. Grand Canyon Univ.*,
   980 F.3d 814 (11th Cir. 2020) .................................................................................................. 3

**Statutes**

47 U.S.C. § 227(b)(1)(A) ............................................................................................................. 6

47 U.S.C. § 227(c)(1) ................................................................................................................... 9

47 U.S.C. § 227(a)(4) ................................................................................................................... 9

47 U.S.C. § 227(c)(5) ................................................................................................................ 4, 9

47 U.S.C. § 227(e)(1) ................................................................................................................... 6

47 U.S.C. § 227(e)(8)(C) .......................................................................................................... 1, 6

47 U.S.C. § 227(g)(1) ............................................................................................................... 1, 6

Telephone Consumer Protection Act (TCPA) ...................................................................... passim

**Other Authorities**

47 C.F.R. § 64.1200(c)–(e) ........................................................................................................ 10

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 2, 12

Local Rule 7.1(b) ..................................................................................................................... 12

Stuart Silverstein, *On Voice Mail, Message Is Clear: Many Don't Like It; Communications: Computer Technology Can Save Costs, but Customers Often Resent Electronic Labyrinths* (L.A. Times, Dec. 30, 1991) https://www.latimes.com/archives/la-xpm-1991-12-30-mn-929-story.html ............................. 5

**MEMORANDUM OF LAW**

I. **INTRODUCTION**

Plaintiff asserts a single cause of action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), alleging that Amenify sent him text messages while his cellular telephone number was listed on the National Do-Not-Call ("DNC") Registry. *See* Compl. ¶¶ 14–27. That theory fails out of the gate, however, because Plaintiff does not have a private right of action to sue over these text messages under the plain statutory language of Section 227(c)(5):

> "A person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State." 47 U.S.C. § 227(c)(5) (emphasis added)

Further, the statute's history and structure confirm that Congress did not intend to confer a private right of action in Section 227(c)(5) for allegedly unlawful text messages. When Congress enacted the TCPA in 1991, text message technology did not yet exist. Congress also used narrower language in Section 227(c)(5) than elsewhere in the TCPA. For example, Congress authorized state actions based on "telephone calls or other transmissions" 47 U.S.C. § 227(g)(1), conferring broader enforcement powers than for private plaintiffs under Section 227(c)(5). And when Congress later amended the TCPA in 2019, it expressly defined "text message" in a new section, *see* 47 U.S.C. § 227(e)(8)(C), but did not amend Section 227(c)(5) to expand the private right of action beyond "telephone call[s]."

Plaintiff's claim under Section 227(c)(5) cannot be salvaged by Federal Communications Commission implementing regulations that went into effect years after the statute was enacted. Although the agency may implement Congress's scheme, it cannot expand the private right of action Congress enacted in Section 227(c)(5). Recent Supreme Court decisions confirm that this Court must apply the TCPA as written, regardless of how the statute may have been interpreted by

1

the FCC. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) (overruling *Chevron, U.S.A. Inc. v. Nat Res. Def. Council, Inc., 467* U.S. 837 (1984)); *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 149 (2025) (holding district courts are not bound by agency interpretations).

Applying ordinary tools of statutory interpretation, federal courts—including in Florida—have repeatedly concluded that Section 227(c)(5) does not authorize private claims based solely on text messages. *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273-74 (N.D. Fla. 2025) (dismissing TCPA claims based solely on text messages); *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-847-SDM-CPT, 2025 WL 2997759, at *2-3 (M.D. Fla. Oct. 24, 2025) (same); *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 901-02 (C.D. Ill. 2025) (same).

Dismissal with prejudice is warranted for the same reasons here because Plaintiff cannot cure this fundamental legal defect in his claim.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of 12(b)(6) analysis, "legal theories contained in a complaint are not accepted as true." *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1383 (11th Cir. 2024). "[U]nwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." *Am. Marine Tech., Inc. v. World Grp. Yachting, Inc.,* 418 F. Supp. 3d 1075, 1080 (S.D. Fla. 2019) (citing *Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1260 (11th Cir. 2009)).

Where a plaintiff's reading of a statute, "render[s] [an] aspect of the [statute] meaningless" and does not fit within even a "strained reading" a court may "decline to adopt" it. *Young v. Grand Canyon Univ.,* 980 F.3d 814, 821 (11th Cir. 2020). Where the plain text of a statute is clear, "there is no need for further inquiry." *United States v. Silva*, 443 F.3d 795, 797-98 (11th Cir. 2006). Further, if dismissal of a Complaint rests on a legal defect where amendment would be futile, then dismissal with prejudice is appropriate. *See, e.g.*, *Hall v. United Ins. Co. of Am.,* 367 F.3d 1255, 1263 (11th Cir. 2004) (affirming lower court's decision dismissing defendant's claims as proper, "because the three new claims asserted, like those in her first amended complaint, would have been subject to dismissal as a matter of law.").

### III.  ARGUMENT

#### A.  After *Loper Bright* and *McLaughlin*, the Court Must Apply the TCPA's Plain Statutory Language as Written

In *Loper Bright* and *McLaughlin*, the Supreme Court emphasized that federal courts are obligated to independently interpret statutory text, even if an agency has offered its own interpretation through rulemaking.

In *Loper Bright* the Supreme Court held that the Administrative Procedure Act directs reviewing courts to "decide all relevant questions of law" and "interpret constitutional and statutory provisions," and on that basis, "courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright,* 603 U.S. at 386, 396–97 (2024) (quoting 5 U.S.C. § 706). Accordingly, the Court in *Loper Bright* held that the doctrine of deference to agency interpretations of statutes in "*Chevron* is overruled" and instructed courts to apply "the reading the court would have reached if no agency were involved" using tools of statutory construction. *Loper Bright*, 603 U.S. at 400-01.

3

The Supreme Court applied *Loper Bright*'s framework to the TCPA in *McLaughlin*, reiterating that the meaning of a statute is a question for courts to address, and "district courts are not bound by the agency's interpretation." *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 155 (2025). Applying that principle, the Court held that "the District Court is not bound by the FCC's interpretation of the TCPA," and that although a district court may "affor[d] appropriate respect to the agency's interpretation," it must "interpret the statute as courts traditionally do under ordinary principles of statutory interpretation," determining statutory meaning. *Id.* at 168.

### B. Plaintiff Does Not Have a Private Right of Action Under 47 U.S.C. § 227(c)(5) to Sue for Receiving Allegedly Unlawful Text Messages

Plaintiff's sole claim in this case is based on 47 U.S.C. § 227(c)(5)'s private right of action to bring suit for alleged violations of the DNC regulations. But, on its face, Section 227(c)(5) only applies to "telephone call[s]," not text messages, and Plaintiff's claim fails accordingly.

Statutory interpretation begins with the text Congress enacted. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654 (2020). Courts presume that Congress "acts intentionally and purposely in the disparate inclusion or exclusion" of statutory language. *Russello v. United States*, 464 U.S. 16, 23 (1983). Courts focus on the words Congress chose: "[w]hen interpreting a statute, we generally give effect to every word and every provision in the statute so that none will needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." *Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 146 F.4th 1080, 1092 (11th Cir. 2025) (citing *Nielsen v. Preap*, 586 U.S. 392, 414 (2019)) (Pryor, C.J., concurring) (internal citations omitted).

Here, Section 227(c)(5) creates a private right of action only where a person "has received more than one ***telephone call*** within any 12-month period" in violation of the DNC regulations. 47 U.S.C. § 227(c)(5) (emphasis added). The text is unambiguous and does not refer to text

4

messages. That should be the beginning, and end, of the analysis. *See Davis,* 797 F. Supp. 3d at 1275 ("Where the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent because we must presume that Congress said what it meant and meant what it said.") (quoting *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998)).

Nor is there any basis to interpret "telephone call" to include text messages.

When Congress enacted the TCPA in 1991, text messaging did not exist. People did not send "text messages" on cellular phones; they used land lines and recorded voice "messages" on electronic voice mail systems or using answering machines. *See* Stuart Silverstein**,** *On Voice Mail, Message Is Clear: Many Don't Like It; Communications: Computer Technology Can Save Costs, but Customers Often Resent Electronic Labyrinths*, L.A. Times, Dec. 30, 1991, https://www.latimes.com/archives/la-xpm-1991-12-30-mn-929-story.html. (discussing sending voice "messages" and describing then-current telephone technologies as of December, 1991, which was the same month the TCPA was signed into law). In that context, Congress wrote Section 227(c)(5) to authorize a private suit only when a person "has received more than one *telephone call*." 47 U.S.C. § 227(c)(5) (emphasis added). Nothing in Section 227(c)(5) mentions texts, and the TCPA gives no indication that Congress meant "telephone call" as a catch-all for later-developed messaging technologies. "Courts must interpret every statute in accord with the ordinary public meaning of its terms at the time of its enactment." *Davis,* 797 F. Supp. 3d at 1272 (citing *Bostock,* 590 U.S. at 654).

In addition, the TCPA's structure confirms that Congress distinguished among communications technologies when it meant to do so. For example, Section 227(b) regulates calls made using an "automatic telephone dialing system" or an "artificial or prerecorded voice," and applies expressly to calls made to "any telephone number assigned to a paging service [or] cellular

5

telephone service." 47 U.S.C. § 227(b)(1)(A).  In turn, "Section 227(b)(3) provides for a private right of action based on a violation of Section 227(b) or the regulations prescribed under it." *Jones,* 792 F. Supp. 3d at 898.  But "cellular telephone service" is not used in Section 227(c) or Section 227(c)(5) specifically.   Similarly, where Congress authorized actions by states in Section 227(g), it used broad language to describe enforcement based on, "telephone calls *or other transmissions*." 47 U.S.C. § 227(g)(1) (emphasis added).  Section 227(c)(5), however, does not use the same formulation as Section 227(g)(1).  Instead, it uses "telephone call", reflecting a narrower private remedy.   Likewise, "Congress's use of the phrase 'telephone call or message' in [Section 227(a)(4)] . . . shows that Congress does not use the term 'telephone call' to encompass all 'messages.'"  *Davis,* 797 F. Supp. 3d at 1274.  "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally." *Russello,* 464 U.S. at 23 (internal quotations omitted); *El Sayed*, 2025 WL 2997759 at *2 ("'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction") (citations omitted).

Further, when Congress amended the TCPA through the Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act ("TRACED Act") in 2019, it addressed text messaging expressly and with precision.  Congress defined "text message" as "a message consisting of text, images, sounds, or other information," and "does not include … a real-time, two-way voice or video communication." 47 U.S.C. § 227(e)(8)(C)(iii).  Congress also updated multiple sections of the TCPA to account for text messaging, for example amending Section 227(e) to regulate conduct, "in connection with any voice service or *text messaging service*." 47 U.S.C. § 227(e)(1) (emphasis added).  But Congress did not update Section 227(c)(5).  That is, although it had the opportunity to do so, Congress did not amend Section 227(c)(5) to expand the private

6

right of action beyond "telephone call[s]." "[W]hen Congress amends a statute, … we ordinarily presume that when Congress does so, it intends its amendment to have real and substantial effect." *Bufkin v. Collins*, 604 U.S. 369, 386 (2025) (citations omitted).

Courts following *Loper Bright* and *McLaughlin* have applied ordinary tools of statutory construction—the text, enactment-era context, and statutory structure—to hold that Section 227(c)(5) does not confer a private right of action to sue for allegedly unlawful text messages.[1]

In *Davis v. CVS Pharmacy, Inc.*, the Northern District of Florida dismissed a nearly identical Section 227(c)(5) claim asserting that text messages violated the DNC regulations. Based on plain text analysis, the court held that, "the statutory text here *is* clear, and a text message is not a 'telephone call.'" *Davis,* 797 F. Supp. 3d at 1273 (emphasis in original). The court determined that the plain text of the statute required dismissing plaintiff's claims because "no ordinary person would think of a text message as a '*telephone* call.'" *Id.* In addition to the clear statutory language, the court reasoned that "[t]his conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case." *Id.* And the absence of any Congressional action to specifically include text messages in Section 227(c)(5) further doomed plaintiff's claim:

---

[1] Amenify acknowledges that some district courts have allowed Section 227(c)(5) claims based on text messages to proceed, even after *Loper Bright* and *McLaughlin*. See *McGonigle v. Office Depot, LLC*, No. 9:25CV80069, 2025 U.S. Dist. LEXIS 231061, at *5 (S.D. Fla. Nov. 25, 2025); *Glasel v. Office Depot, LLC*, No. 9:24-cv-80910, 2025 U.S. Dist. LEXIS 231053, at *6 (S.D. Fla. Nov. 25, 2025); *Bosley v. A Bradley Hosp. LLC*, No. 25-cv-22336, 2025 U.S. Dist. LEXIS 183986 at *12 (S.D. Fla. Sep. 18, 2025). But Amenify respectfully believes that these cases were not correctly decided. In *McGonigle* and *Glasel*, the courts acknowledged that Section 227(c) is silent as to text messages and conceded that, on a "blank slate," the textual argument that a "telephone call" does not include a text message is persuasive, but declined to depart from historical FCC interpretation and district-court practice. *McGonigle*, at *3-4; *Glasel*, at *6. *Bosley* likewise assumed—without deciding—that text messages constitute "telephone calls," denying dismissal without construing the statute's text. See *Bosley*, 2025 U.S. Dist. LEXIS 183986 at *13. Accordingly, because those decisions did not properly give weight to the plain statutory text of Section 227(c)(5), and instead relied on agency interpretations, they are inconsistent with *Loper Bright* and *McLaughlin*.

7

> Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter. Whatever its reasoning, it clearly limited the private right to those receiving 'telephone calls.' *Id*. at 1274.

The Middle District of Florida reached the same conclusion in *El Sayed* and similarly dismissed a Section 227(c)(5) claim based on text messages. As in *Davis*, the *El Sayed* court applied *McLaughlin*, and focused on the ordinary meaning of the statute, emphasizing that the natural reading of the term "telephone call" does not include "text message." *El Sayed,* 2025 WL 2997759 at *1 (citing *McLaughlin*, 606 U.S. 146, 168 (2025)). The court also considered the TCPA's statutory structure, reasoning that because "[t]he omission of 'text message' from paragraph 227(c)(5) confirms that the provision applies only to a telephone call." *Id.* at *2.

Outside of Florida, the Central District of Illinois in *Jones v. Blackstone Medical Services, LLC*, likewise dismissed an identical claim under Section 227(c)(5). *Jones,* 792 F. Supp. 3d at 902. The court gave effect to the plain language of the statutory text, emphasizing that "[t]he 'ordinary' principle of statutory interpretation — to start with the text of the statute to ascertain its plain meaning — provides the answer." *Id.* at 901. The Court further explained that at the time of the TCPA's drafting, "[t]ext messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages." *Id.* at 899. Given that historical context, the court rejected plaintiff's argument that Section 227(c)(5) applies to a "telephone solicitation", which includes both a "telephone call or message." *Id.* "The fact that 'telephone solicitation' appears in Section 227(c) and is defined earlier in Section 227(a) to mean 'the initiation of a telephone call or message'… does not change the plain meaning analysis." *Id.* at 900. That is because, as enacted, Section 227(a)'s reference to, "'telephone call or message' could not be interpreted in 1991 to telephone call or *text* message." *Id.* The court therefore held that "[p]laintiffs have failed to state claims for violations of Section 227(c) of the TCPA… given

8

that allegedly 'violative text messages' stand at the core of Plaintiffs' factual allegations." *Id.* at 901-02.

Dismissal is warranted for the same reasons here.

### C. FCC Implementing Regulations Cannot Save Plaintiff's Complaint From Dismissal

In an attempt to avoid Section 227(c)(5)'s plain text, Plaintiff's Complaint cites FCC implementing regulations referring to text messages to support his claim. *See* Compl. ¶ 43. But those regulations cannot override or expand the private right of action Congress established using clear, unambiguous language. The Supreme Court has made clear that courts must determine statutory meaning for themselves and may not treat agency interpretations as controlling. *See Loper Bright,* 603 U.S. at 398; *McLaughlin,* 606 U.S. at 168–69. Accordingly, the question here is not whether the FCC has regulated certain text-message practices, but whether Congress authorized private plaintiffs to sue for those practices under Section 227(c)(5). It did not. "Without [congressional intent] a cause of action does not exist and courts may not create one, no matter how compatible with the statute." *Davis*, 797 F. Supp. 3d at 1275 (internal citations omitted).

In Section 227(c)(1), Congress directed the FCC to promulgate rules "to avoid receiving telephone solicitations," and incorporated the definition of "telephone solicitation" as "the initiation of a telephone call or message" in Section 227(a)(4). 47 U.S.C. § 227(c)(1), § 227(a)(4). Congress addressed private enforcement separately in Section 227(c)(5), authorizing an individual lawsuit only where a person "has received more than one ***telephone call*** within any 12-month period." 47 U.S.C. § 227(c)(5) (emphasis added). Section 227(c)(5) does not authorize private suits for every "telephone solicitation," nor does it incorporate the broader definitional language governing the FCC's regulatory authority. Instead, § 227(c)(5) limits private suits to the receipt of two or more "telephone call[s]," even though the FCC's authority extends more broadly and

9

one telephone call alone would potentially violate the TCPA.  *See Davis*, 797 F. Supp. 3d at 1274 ("[t]he very provision at issue (§ 227(c)(5)) proves the point.  It limits the private right to those who received two or more unwanted calls, even when a single call would violate the TCPA.").

The FCC's implementing regulations—specifically 47 C.F.R. § 64.1200(c), (d), and (e)—do not change the conclusion that Section 227(c)(5) only provides a private right of action for "telephone call[s]."  *See* Compl. ¶¶ 41–47.  Sections 64.1200(c) and (d) regulate "telephone solicitation[s]" and "call[s] for telemarketing purposes," and § 64.1200(e) clarifies that those provisions apply to persons making such calls to wireless telephone numbers. 47 C.F.R. § 64.1200(c)–(e); *see* Compl. ¶ 44. None of these provisions, however, state that a text message is a "telephone call," and they do not redefine or expand the private right of action Congress created in Section 227(c)(5).  *See Davis,* 797 F. Supp. 3d at 1274 ("however Congress defines 'telephone solicitation'—and whatever Congress directed the FCC to do in terms of regulating certain 'telephone call[s] or message[s]'—the private right of action Congress created exists only for those who received multiple 'telephone calls.'").  Nor could they.  *Alexander v. Sandoval,* 532 U.S. 275, 291 (2001) ("[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." (internal citations omitted)); *see also Jones* 792 F. Supp. 3d at 901 ("in the business of statutory interpretation, if an interpretation is not the best, it is not permissible." (citing *Loper Bright*, 603 U.S. at 400)).

Plaintiff's attempt to invoke the FCC's 2003 Report and Order fares no better.  *See* Compl. ¶ 44 (citing *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 (2003)).  That Order addresses the applicability of the do-not-call rules to wireless telephone numbers and discusses Section 227(b)

of the TCPA, ***not*** Section 227(c)—let alone Section 227(c)(5) specifically.  *See Jones* 792 F. Supp. 3d at 900 ("the 2003 Order explicitly references only Section 227(b)").

Courts applying this framework have rejected the precise argument Plaintiff appears to advance here.  *See, e.g.*, *Davis,* 797 F. Supp. 3d at 1275; *Jones*, 792 F. Supp. 3d at 901.  In *Davis*, for example, the court reasoned that "even assuming the FCC order clearly defined 'telephone calls' as that term is used in § 227(c)(5), 'appropriate respect' for that conclusion would not require a different outcome here." *Davis,* 797 F. Supp. 3d at 1275.  "One can provide 'appropriate respect' to an agency's view without adopting a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text." *Id*.  The court in *Jones* similarly explained that "the 2003 Order addressed only Section 227(b)" and noted that:

> "While the Court affords a certain amount of respect to the FCC's interpretation of the terms used in the TCPA, the fact remains that Section 227(c)(5) of the TCPA includes 'telephone call' and does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages."  *Jones, 792 F. Supp. 3d at* 901.

Applying *Loper Bright* and *McLaughlin*—and giving full effect to the plain statutory text, rather than a strained interpretation based on inapplicable regulations and agency action—the Court should reach the same conclusion here.   As the Supreme Court instructed in *McLaughlin*, district courts are "not bound by the FCC's interpretation of the TCPA" and must instead "interpret the statute as courts traditionally do under ordinary principles of statutory interpretation." *McLaughlin*, 606 U.S. at 168–69.

### D.     The Complaint Should Be Dismissed With Prejudice

Dismissal with prejudice is appropriate where, as here, "a more carefully drafted complaint could not state a claim." *Woldeab v. Dekalb Cty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)).  In such circumstances, leave to amend may be denied as futile because the deficiency cannot be cured by amendment.  *See Bank,*

928 F.2d at 1113.  The Eleventh Circuit has reaffirmed that principle where "a more carefully crafted complaint could not state a claim." *Short v. Immokalee Water & Sewage Dist.*, 801 F. App'x 671, 676 (11th Cir. 2020).  Because Section 227(c)(5) authorizes suit only for "telephone call[s]" and Plaintiff alleges only to have received text messages, further amendment would be futile and dismissal with prejudice is warranted.

### IV.   CONCLUSION

For the reasons set forth above, the Complaint should be dismissed with prejudice.

### Request for Hearing

Pursuant to Local Rule 7.1(b) of the Southern District of Florida, Amenify respectfully requests oral argument on its Motion to Dismiss and states as follows:

1. Amenify's Motion to Dismiss raises substantive legal issues, including, pleading deficiencies under Rule 12(b)(6) and statutory interpretation that would benefit from clarification through oral argument.

2. Oral argument would assist the Court by allowing the parties to address questions regarding the scope of the claims, applicable legal standards, and the practical implications of dismissal, and by permitting the Court to test the parties' positions in real time.

3. The issues presented are dispositive and go to the core viability of Plaintiff's claims, and oral argument would promote judicial efficiency by potentially narrowing or resolving the case at this stage.

4. Amenify believes that oral argument can be conducted efficiently and at the Court's convenience.

WHEREFORE, Defendant respectfully requests that the Court grant oral argument on Defendant's Motion to Dismiss.

| | |
|---|---|
| Date: January 12, 2026 | Respectfully submitted,<br><br>*/s/Derek K. Mountford*<br>Derek K. Mountford (Fla. Bar No. 127172)<br>GUNSTER, YOAKLEY & STEWART, P.A.<br>1 Independent Drive, Suite 2300<br>Jacksonville, FL 32202-5185<br>(904) 350-7179<br>Email: dmountford@gunster.com<br><br><br>*/s/ Adam J. Hunt*<br>Adam J. Hunt (*Pro Hac Vice Pending*)<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, NY  10019<br>(212) 336-4341<br>Email: adamhunt@mofo.com<br><br>*Attorneys for Defendant Amenify Corporation* |

13

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record:

*Counsel for Felix Cardero*

EDELSBERG LAW P.A.
Scott Adam Edelsberg
20900 NE 30th Ave 417
Aventura, FL 33189
scott@edelsberglaw.com

SHAMIS & GENTILE P.A.
Andrew John Shamis
14 N.E. 1st Ave, Ste 1205
Miami, FL 33132
ashamis@sfinjuryattorneys.com

Christopher Eric Berman
1650 SE 17th St. 100
Fort Lauderdale, FL 33316
cberman@shamisgentile.com

/s/Derek K. Mountford
Attorney

14